EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hermandad Independiente de Empleados Telefónicos<br><br>Peticionario<br><br>v.<br><br>Celulares Telefónica, Inc.<br><br>Recurrida | Certiorari<br><br>2006 TSPR 144<br><br>169 DPR _____ |

Número del Caso: CC-2004-667

Fecha: 18 de septiembre de 2006

Tribunal de Apelaciones:

    Región Judicial de San Juan-Panel III

Juez Ponente:

    Hon. Antonio J. Negroni Cintrón

Abogado de la Parte Peticionaria:

    Lcdo. Alejandro Torres Rivera

Abogado de la Parte Recurrida:

    Lcdo. Carlos A. Padilla Vélez

Abogada Secretario del Departamento del Trabajo y Recursos Humanos:

    Lcda. Celina Romany

Materia: Arbitraje

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hermandad Independiente de
Empleados Telefónicos

    Peticionario

       v.

Celulares Telefónica, Inc.

    Recurrida

CC-2004-667

SENTENCIA

San Juan, Puerto Rico, a 18 de septiembre de 2006

La peticionaria, Hermandad Independiente de Empleados Telefónicos (la "HIETEL"), nos solicitó la revisión de una sentencia emitida por el Tribunal de Apelaciones que confirmó una sentencia del Tribunal de Primera Instancia. En la sentencia de instancia se modificó un laudo de arbitraje emitido por un árbitro del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. Allí se dispuso que, aun cuando procedía confirmar que el despido del empleado de Celulares Telefónica, Inc. había sido injustificado, éste sólo tenía derecho al remedio dispuesto por la Ley Núm. 80 de 30 de mayo de

1976 (la "Ley Núm. 80"), Ley de Despido Injustificado, y no tenía derecho a la reposición en el empleo y paga retroactiva, como había dispuesto el árbitro.

I

Los hechos en este caso no están en controversia por lo que no hay que relatar los mismos en gran detalle. Baste señalar que la compañía Celulares Telefónica despidió a uno de sus empleados, el señor Nelson Maldonado, por alegadamente haber violentado sendas disposiciones del Reglamento de Disciplina de la compañía. Éste presentó una querella en contra de su patrono y el caso fue eventualmente sometido a arbitraje. Oportunamente el árbitro emitió el correspondiente laudo. En el mismo, concluyó que el despido del Sr. Maldonado no estuvo justificado por lo que ordenó su reposición inmediata y el pago de los haberes dejados de recibir desde la fecha de su despido.

Inconforme con el laudo de arbitraje, el 21 de noviembre de 2001, Celulares Telefónica presentó petición de revisión de laudo ante el Tribunal de Primera Instancia alegando que erró el árbitro al determinar que el despido del Sr. Maldonado no estuvo justificado. Arguyó también que de ser injustificado el despido, el remedio no podía ser la reposición en el puesto que ocupaba y el pago de los

haberes dejados de percibir por ser contrario a lo dispuesto en la Ley de Despido Injustificado.

Trabada así la controversia, el 21 de octubre de 2003, el Tribunal de Primera Instancia emitió sentencia en la que modificó el laudo emitido para eliminar la parte del mismo que ordenaba la reposición del empleado y los haberes dejados de recibir. El foro de instancia concluyó que ante un despido injustificado, el Sr. Maldonado sólo tenía derecho al remedio dispuesto por la Ley de Despido Injustificado debido a que el laudo debía ser emitido conforme a derecho. Dicha sentencia fue notificada y archivada en autos el 30 de octubre de 2003.

Ante esta determinación, el 2 de diciembre de 2003, la HIETEL presentó un recurso ante el Tribunal de Apelaciones. Alegó, en esencia, que erró el tribunal de instancia al revocar parcialmente el laudo emitido eliminando la determinación que ordenaba la reposición y paga retroactiva del Sr. Maldonado, y sustituir dicho remedio por aquel que confería la Ley Núm. 80. Atendido el recurso de Certiorari, el 28 de mayo de 2004, el Tribunal de Apelaciones emitió sentencia confirmando el dictamen del foro de instancia. Concluyó que tratándose de un convenio colectivo que disponía que las controversias sometidas a

arbitraje tenían que ser resueltas conforme a derecho, el único remedio era la mesada que concedía la Ley Núm. 80. El tribunal sostuvo que el convenio colectivo suscrito no le confería poder al árbitro para conceder un remedio más amplio que el de la Ley Núm. 80.

Oportunamente, la HIETEL acudió ante nosotros. En su recurso señaló el siguiente error:

> Erró el Honorable Tribunal de Apelaciones al negarse a reconocer la facultad del Árbitro de otorgar los remedios de reposición y paga de los haberes dejados de devengar por el empleado Nelson Maldonado desde la fecha de su despido a pesar de que este tipo de remedio está explícitamente contemplado en el Convenio Colectivo en varias de sus disposiciones y no existe como tal una prohibición expresa por las partes contra el mismo.

Expedimos. Posteriormente, el Secretario del Trabajo y Recursos Humanos solicitó comparecer como amigo de la corte, solicitud a la que accedimos. El 23 de febrero de 2006 dictamos una sentencia desestimando el recurso por falta de jurisdicción. Luego de una oportuna moción de la HIETEL acordamos reconsiderar y dejamos sin efecto la sentencia dictada. Pasamos ahora a resolver.

Evaluado los planteamientos de las partes, así como la posición del Secretario del Trabajo y Recursos Humanos, se dicta sentencia revocando la sentencia emitida por el Tribunal de Apelaciones y se ordena la reposición del señor

Nelson Maldonado a su puesto en Celulares Telefónica con el pago de los haberes dejados de devengar.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de conformidad a la cual se le unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Fuster Berlingeri. El Juez Asociado señor Rebollo López emitió una Opinión de conformidad a la cual se le une la Jueza Asociada señora Fiol Matta. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hermandad Independiente de
Empleados Telefónicos (HIETEL)

    Peticionario

       vs.                 CC-2004-667     CERTIORARI

Celulares Telefónica, Inc.

    Recurridos

OPINIÓN DE CONFORMIDAD EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ, A LA CUAL SE UNE LA JUEZ ASOCIADA SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 18 de septiembre de 2006

Estamos conformes con el resultado al que se llega en la Sentencia que el Tribunal emite en el presente caso en el día de hoy. Hemos decidido expresarnos por separado, sin embargo, en vista de los señalamientos y fundamentos --a nuestro juicio, erróneos-- que tres de los integrantes del Tribunal han tenido a bien hacer en el caso.[1]

I

La amplia facultad de los árbitros para conceder remedios es un principio reconocido en

---

[1] Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez, a la cual unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Fuster Berlingeri.

el campo del derecho laboral desde hace más de 40 años. Lamentablemente, en el día de hoy tres integrantes de este Tribunal pretenden limitar dicha facultad, eje y centro del arbitraje obrero patronal, apoyándose en una interpretación errónea de la jurisprudencia, y obviando que en el presente caso el acuerdo de sumisión sometido al árbitro expresamente disponía que éste proveyera el "remedio adecuado".

Al hacer su determinación en el presente caso, estos distinguidos magistrados parten del razonamiento errado que si un convenio colectivo o un acuerdo desumisión disponen que el laudo que emita un árbitro debe ser uno conforme a derecho, esto constituye una limitación en cuanto a los poderes remediales del árbitro. Como consecuencia de esta premisa equivocada, dichos Magistrados arriban al resultado erróneo de que la frase "conforme a derecho" implica que un árbitro, ante un caso de despido injustificado, está limitado a conceder el remedio que contempla la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. § 185 et seq., conocida como Ley de Despido Injustificado. Nada más lejos de la realidad.

Para establecer lo erróneo de esta conclusión, tan solo tenemos que examinar las normas establecidas por este Tribunal y por los tribunales federales en cuanto al arbitraje obrero patronal, los acuerdos de sumisión, y la interpretación de convenios colectivos. Veamos.

II

La relación de los hechos del caso que se hace es una adecuada. Por dicha razón, y con el propósito de no cansar al lector, adoptamos la misma. Nos dedicamos a analizar la controversia en el presente caso. La misma, puesta en su justa perspectiva es si, en un caso de despido injustificado, en el cual las partes someten una sumisión en la que se le solicita al árbitro que provea el "remedio adecuado" en caso en que determine si, en efecto, el despido del empleado fue injustificado: ¿puede el árbitro conceder como remedio la reposición con paga atrasada o está limitado a otorgar la mesada que reconoce la Ley 80?[2]

A

Cuando en un convenio colectivo existe un acuerdo voluntario para utilizar el arbitraje como mecanismo de ajuste de controversias ello crea un foro sustituto a los tribunales de justicia. "En efecto, ello representa una sustitución del juez por el árbitro." Condado Plaza Hotel v. Asociación de Empleados, 149 D.P.R. 347, 352 (1999). En igual sentido, el profesor Demetrio Fernández Quiñones, en su obra El Arbitraje Obrero-Patronal, Forum, Primera

---

[2] La Mayoría configuró la controversia en los siguientes términos: si se excede en sus facultades el árbitro al momento de emitir un laudo que debe ser conforme a derecho al conceder como remedio la reposición y paga retroactiva del empleado despedido, alejándose del remedio exclusivo de la mesada que confiere la Ley de Despido Injustificado.

Edición, 2000, pág. 21, expresa que el arbitraje laboral es un sustituto del litigio judicial. Por ello, las partes están compelidas, por su propio acuerdo, a aceptar la decisión del árbitro como final y obligatoria. *Ibid*.

La referida autoridad del árbitro para entender en un procedimiento de arbitraje emana del acuerdo de sumisión y del convenio colectivo existente entre patrono y unión. Véase: J.R.T. v. Otis Elevator Co., 105 D.P.R. 195 (1976); Colón Molinary v. A.A.A., 103 D.P.R. 143, 148-149 (1974); J.R.T. v. N.Y. & P.R. S/S Co., 69 D.P.R. 782 (1949).

Ahora bien, una de las características fundamentales del procedimiento de arbitraje obrero-patronal es, como ya hemos indicado, la facultad de los árbitros de conceder remedios. En lo referente a esta facultad remedial del árbitro, el Tribunal Supremo de Estados Unidos ha establecido que cuando las partes acuerdan someter al árbitro cuestiones de aplicación e interpretación del convenio colectivo, éste tiene amplia autoridad para conceder remedios siempre y cuando no se le haya limitado la misma en el convenio o en el acuerdo de sumisión. Véase: Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

En igual sentido, en el caso de Sonic Knitting Industries, Inc. v. International Ladies Garment, etc., 106 D.P.R. 587 (1978)[3], este Tribunal expresó que cuando una

---

[3] Resuelto por este Tribunal mediante una Sentencia.

controversia delimitada se somete a un árbitro éste debe tener considerable latitud en confeccionar el laudo.[4] "No es razonable que un árbitro tenga poder para entender en una controversia entre patrono y unión sin tener autoridad para imponer el remedio que creyera propicio de acuerdo al laudo emitido." *Ibid*, a la pág. 564. (Énfasis nuestro) (citas omitidas).

Este poder para la concesión de un remedio, ya sea el cumplimiento específico, injunctions o daños, debe surgir de la sumisión o del convenio. Fleming, Arbitrators and the Remedy Power, 48 Va. L. Rev. 1199 (1962). No debe haber duda sobre el hecho de que los árbitros están facultados para disponer remedios que sean consustanciales y afines a los propósitos de la ley y el convenio.[5] Dicho de otra forma, al estar delimitados los poderes del árbitro por el convenio colectivo y el acuerdo de sumisión, el remedio que el árbitro otorgue tendrá que ser consustancial con los mismos.

---

[4] En ese caso, el mandato expreso del árbitro fue solamente determinar si había ocurrido un incumplimiento de contrato. No se hizo ninguna mención expresa para la formulación de un remedio.

[5] En S.I.U. de P.R. v. Otis Elevador Co., ante, a la pág. 841, se reafirmó la autoridad de los árbitros de variar sanciones disciplinarias si consideraba que las mismas eran muy severas o drásticas. Lo mismo se dispuso en J.R.T. v. N.Y. & P.R. Steamship, Co., ante, en cuanto a que en ausencia de una disposición expresa en contrario en el convenio colectivo o en el acuerdo de sumisión el árbitro puede determinar que una pena es demasiado drástica y modificarla.

Vemos que, como regla general, el árbitro tiene amplia autoridad para otorgar remedios, pues es él quien está llamado a interpretar el convenio colectivo. Véase: Condado Plaza Hotel v. Asociación de Empleados, ante.

Es por esta razón que, en ausencia de lenguaje claramente restrictivo, ya sea dentro del convenio o dentro de la sumisión, se debe conceder al árbitro gran latitud en la confección de un remedio apropiado. Lodge #12, District #37, International Ass'n of Machinists v. Cameron Iron Works, Inc., 292 F.2d 112, 119 (5th Cir.); College Hall Fashions Inc. v. Phil. Joint Board, Amalgamated Clothing Workers of America, 408 F.Supp. 722, 728 (E.D. Pa. 1976); Texas Gas Transmission Corp. v. Int'l Chemical Workers, 200 F.Supp. 521, en reconsideración, 527 (S.D. N.Y. 1959), Stutz, Arbitrators and the Remedy Power, Labor Arbitration and Industrial Change, National Academy of Arbitrators, Proceedings 16th Annual Meeting, (1963), pág. 54.

Además, hemos expresado que los tribunales no deben sustituir el criterio del árbitro, aun bajo la hipótesis que hubiesen provisto un remedio distinto de haberse sometido la controversia al foro judicial. S.I.U. de P.R. v. Otis Elevador Co., ante. La interpretación del convenio colectivo es una cuestión que le compete exclusivamente al árbitro y no a las cortes. Steelworkers v. Enterprise Wheel & Car Corp., ante.

Por consiguiente, cuando las partes autorizan a un árbitro a interpretar el convenio colectivo sin ninguna

limitación expresa, los tribunales actuarán con deferencia respecto al remedio que éste haya concedido siempre y cuando el árbitro haya aplicado e interpretado el convenio colectivo entre las partes y haya actuado dentro del marco de esta autoridad, aunque el tribunal entienda que se haya cometido un error. Véase: Paperworkers v. Misco, 484 U.S. 29, 38 (1987).


B

Tal y como hemos señalado, la tendencia moderna en el Derecho laboral es la de concederle amplia autoridad al árbitro para diseñar un remedio adecuado a su laudo. S.I.U. de P.R. v. Otis Elevator Co., ante; Steelworkers v. Enterprise Corp., 363 U.S. 593, 597 (1960); F. Elkouri y E. Elkouri, How Arbitration Works, 3ra ed. Washington, The Bureau of National Affairs, Inc., 1973, pág. 351.

La facultad remedial del árbitro cobra especial importancia en casos en que se alega un despido injustificado en violación de un convenio colectivo. En estos casos, el remedio que configure el árbitro responde al alegado incumplimiento del patrono con el convenio colectivo.

Sobre lo que constituye el "remedio adecuado" en casos de despido injustificado los tratadistas Marvin Hill Jr. y Anthony V. Sinicropi en *Remedies in Arbitration* a las páginas 42-43 y 54-55 señalan:

"An order of reinstatement should be expected to be issued where a discharge is held not to be for just cause… [I]t is clear that no rule of law limits an arbitrator from ordering the reinstatement of an employee who has been discharged without good cause." Págs. 42-43

"In the area of labor relations it is uniformly recognized that the purpose of a back-pay award is to indemnify the employee by making him whole for loss of earnings incurred by reason of the employer's contract violation. This loss of earnings is generally measured by the wages that he would have earned during the period they were denied. pág. 54. (Énfasis nuestro).

"There is no genuine issue concerning the power of an arbitrator to make a monetary award of back pay. Even where this power is not expressly provided for in the collective bargaining agreement, or expressly requested in the parties written submission to the arbitrator, arbitrators have held that the power to decide the disciplinary issue includes the power to formulate an appropriate remedy including, but not limited to, back pay". pág. 55. (Énfasis nuestro).

De igual forma, los tratadistas Elkouri and Elkouri, *op cit*. pág. 688, señalan que si una pena de despido impuesta por el patrono es revocada por el árbitro, el remedio muchas veces será la reinstalación, con o sin paga atrasada.

Según el profesor Demetrio Fernández Quiñones, "[s]i el árbitro determina que el patrono carecía de justa causa para el despido, procederá a diseñar el remedio adecuado." op. cit. pág. 221. Y añade que es norma más que reiterada que la reinstalación del empleado ha sido el remedio común y más usado por los árbitros en los casos de arbitraje laboral por despido ilegal. *Ibid.*

Ahora bien, y como vimos, la reinstalación del empleado no es el único remedio adecuado en este tipo de casos; el árbitro puede ordenar la paga atrasada. Ello con el propósito de compensar al empleado en la pérdida de salarios que ha incurrido como consecuencia de la violación del convenio colectivo por el patrono; dicho de otra forma, el propósito es restaurar el *status quo* económico. Fernández Quiñones, *op cit.* pág. 222.

De particular relevancia al presente caso es la decisión en el caso de Challenger Caribbean v. Unión Gen. de Trabajadores, 903 F.2d 857 (1st Cir.1990). En ese caso el Tribunal de Distrito Federal para el Distrito de Puerto Rico, había anulado un laudo[6] porque entendía que el árbitro se había extralimitado en sus poderes al ordenar la reinstalación y la paga atrasada de los empleados, porque el único remedio al que tenían derecho los empleados era la mesada de la Ley 80. El Primer Circuito revocó esa decisión razonando que los remedios de la Ley 80 eran diferentes a los del Convenio Colectivo. Por lo tanto, como la alegación de la Unión fue que el despido, aunque violaba la Ley 80 también violaba el Convenio Colectivo, el Tribunal resolvió que el laudo ordenando la reinstalación y el pago de haberes dejados de percibir, emanaba del Convenio y era conforme a derecho, por lo que fue confirmado.

---

[6] En este caso el laudo tenía que ser conforme a derecho.

El Primer Circuito expresó, además, en dicho caso que:

> An "arbitrator's award settling a dispute with respect to the interpretation and application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Misco,* 484 U.S. at 38, 108 S.Ct. at 368. When an award "manifest[s] an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. p. 861
>
> We do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award. We cannot vacate the award because the arbitrator misreads the contract, where there is room to do so, nor are we authorized to reject his honest judgment as to the appropriate remedy, if the contract gives him authority to decide that question. 'As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' *Ibid*, pág. 861.

En específico, sobre la controversia en cuanto a si el árbitro estaba facultado en conceder el remedio de la reposición y paga atrasada, la Corte Federal de Apelaciones para el Primer Circuito expresó que un convenio colectivo podía ampliar, pero nunca disminuir, los estándares mínimos prescritos en las leyes laborales estatales, y que, a menos que el convenio o la sumisión no lo limitaran, el árbitro poseía poderes amplios para diseñar el remedio adecuado. Challenger Caribbean v. Unión Gen. de Trabajadores, ante a la pág. 869.

III

Por otro lado, es norma reiterada en nuestra jurisdicción que la facultad de los tribunales para revisar laudos es una limitada. Así, los motivos por los cuales un laudo puede ser impugnado se reducen a: (1) fraude, (2) conducta impropia, (3) falta de debido procedimiento en la celebración de la vista, (4) violación de la política pública, (5) falta de jurisdicción, y (6) que el laudo no resuelva todas las cuestiones que se sometieron. J.R.T. v. New York & Puerto Rico Steamship, Co., ante.

Como es sabido, la especial deferencia concedida a los laudos que emiten los árbitros, la hemos concebido en los siguientes términos: como norma general, los errores de hecho cometidos por el árbitro en un laudo no serán revisables por los tribunales. Es por esta razón que es sólo a modo de excepción que los tribunales pueden intervenir y revisar un laudo de arbitraje. En caso que no estén presente ninguna de las circunstancias antes mencionadas, un tribunal puede revisar un laudo si el convenio o acuerdo de sumisión, según sea el caso, consigna expresamente que el laudo sea resuelto conforme a derecho.[7]

---

[7] La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846 (1989); J.R.T. v. Hato Rey Psychiatric Hosp.,

Dicha revisión se hará con referencia al derecho aplicado. S.I.U. de P.R. v. Otis Elevador Co., ante. En relación a esto, también hemos expresado que cuando las partes pactan que el laudo arbitral sea conforme a derecho, los tribunales podrán corregir errores jurídicos en referencia al derecho aplicable. Véase: Condado Plaza Hotel v. Asociación de Empleados, ante.

Se desprende de lo anterior que cuando se requiera que un laudo sea emitido conforme a derecho, el mismo puede ser revisado bajo las normas de revisión judicial. Así, si el convenio colectivo o el acuerdo de sumisión expresamente disponen que el laudo debe ser emitido conforme a derecho, los foros apelativos están facultados a revisar todas las cuestiones de derecho sustantivo resueltas por el árbitro.

En ausencia de una fraseología en ese sentido --esto es, que el laudo tenga que ser emitido conforme a derecho-- el árbitro podrá determinar cuál es la ley, sin que los tribunales puedan intervenir en la decisión del árbitro. Así lo admite la Mayoría al expresar que: "[l]a exigencia que el laudo sea conforme a derecho coloca a éste fuera del ámbito de las reglas ordinarias de la revisión judicial; es decir, aquellas que afirman su finalidad no

---

119 D.P.R. 62 (1987); U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348 (1985); J.R.T. v. National Packing Co., 112 D.P.R. 162 (1982); J.R.T. v. Securitas, Inc., 111 D.P.R. 580 (1981); y otros.

obstante los errores de hecho o de derecho".[8] Así también lo establecen expresamente los casos citados por la Mayoría.[9]

Por otro lado, la implicación a ser derivada de la posición contraria, esto es, que un laudo sea emitido conforme a derecho, es que al emitir un laudo el árbitro no puede apartarse de las normas interpretativas de derecho sustantivo y las doctrinas legales prevalecientes. Sobre este aspecto, en el caso de Condado Plaza Hotel v. Asociación de Empleados, ante, expresamos que al interpretar un convenio, el árbitro no estaba limitado a su contenido, sino que debía hacerlo a la luz de las normas interpretativas de derecho sustantivo emitidas por el Tribunal Supremo federal y el Tribunal Supremo de Puerto Rico en el campo de derecho laboral. Cuando un árbitro deba emitir un laudo conforme a derecho, esto implica también que el laudo no puede apartarse de lo dispuesto en el convenio colectivo que el árbitro está interpretando, ni el acuerdo de sumisión, ya que de ambos emana la facultad del árbitro para atender las controversias obrero-patronales.

---

[8] Citando a J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581 (1990).

[9] Estos son: J.R.T. v. New York & Puerto Rico Steamship, Co., ante; Condado Plaza Hotel v. Asoc. de Empleados de Casino, ante; Aut. Edif. Públicos v. Unión Independiente, 130 D.P.R. 983 (1992); J.R.T. v. Hato Rey Psychiatric Hospital, ante.

En particular, y en lo relevante al presente caso, cuando un árbitro tenga que emitir un laudo conforme a derecho en aquellas situaciones que versen sobre la existencia de justa causa para un despido, éste vendrá obligado a aplicar las normas y doctrinas legales prevalecientes en esta jurisdicción. "Ello implica que el árbitro tendrá que recurrir a la Ley de Despido Injustificado para obtener la definición sobre justa causa que ha establecido el Tribunal Supremo. En ese tenor el árbitro está subordinado al derecho sustantivo vigente". Fernández Quiñones, op. cit. pág. 217. Así, además si el árbitro tiene que resolver conforme a derecho en un caso de despido, está impedido de variar el castigo de despido impuesto al empleado, si concluye que hubo justa causa. *Ibid*, pág. 221.

De lo expresado, y contrario a la posición de los tres Jueces antes mencionados, se desprende con meridiana claridad que la frase conforme a derecho nunca ha sido interpretada por este Tribunal como una limitación a las facultades remediales del árbitro. Todo lo contrario, nunca hemos cuestionado la facultad que tienen los árbitros a conceder la reposición y la paga retroactiva como remedio. La única limitación en cuanto al remedio que diseñe un árbitro, es que el mismo no viole el convenio colectivo o el acuerdo de sumisión.

IV

En este punto, es menester señalar que en su afán por resolver que según el acuerdo de sumisión, el árbitro en el presente caso estaba limitado a conceder el remedio de la mesada, nuestros tres compañeros Jueces interpretan de forma equivocada la decisión emitida por este Tribunal en J.R.T. v. Securitas Inc., ante. En dicho caso se sometió a arbitraje la cuestión de si el despido de un empleado estuvo justificado o no. Específicamente se estableció en el acuerdo de sumisión que "[d]e determinarse que fue injustificado, el árbitro proveerá el remedio correspondiente". *Ibid*, a la pág. 581. Al resolver la controversia ante sí, el árbitro entendió que el despido no estuvo justificado y ordenó la reposición del empleado así como el pago de los salarios dejados de percibir. El patrono impugnó el referido laudo y alegó que el mismo era nulo por ser contrario a derecho.

En primer lugar, este Tribunal rehusó intervenir con la determinación del árbitro en cuanto a que el despido fue injustificado y expresó que, como ni el convenio colectivo ni el acuerdo de sumisión requerían que el árbitro resolviese la cuestión sometida conforme a derecho, era improcedente revisar supuestos errores de índole jurídica.

En segundo lugar, en este caso se planteó la controversia de si el árbitro se había excedido de sus funciones al ordenar la reposición del empleado despedido y el pago de los salarios dejados de devengar en

contradicción a la entonces vigente Ley Núm. 50 de 20 de abril de 1949, la cual fue derogada por la Ley Núm. 80.[10] Al examinar la Ley Núm. 80 y sus disposiciones referentes al pago de la mesada, expresamos lo siguiente:

> No discernimos disparidad entre la política del estatuto y el laudo emitido. **No se nos ha demostrado que la intención legislativa haya sido fijar sanciones máximas exclusivas para casos de despido cuando media un convenio colectivo y un amplio acuerdo de sumisión sobre la justificación de la cesantía**. ¿Cómo es que puede interpretarse que la legislación sobre la mesada ha obedecido por décadas al propósito de impedir que un árbitro, bajo un acuerdo de sumisión que no limite claramente sus poderes, ordene la reposición de un empleado y el pago de sus sueldos dejados de percibir, más intereses? En Puerto Rico, hemos distinguido tajantemente entre los derechos bajo un convenio colectivo y los derechos de mesada. (Énfasis nuestro).

Dichos magistrados indican que en el referido caso ya se había "intimado" que cuando un laudo debía ser emitido conforme a derecho el remedio debía atenerse a la mesada por ser el único que contempla la Ley. Y añade que en ese caso se resolvió que "un árbitro, en un caso de despido injustificado, podía conceder un remedio distinto al provisto en la Ley Núm. 80, **si no se habían limitado sus poderes a que el laudo fuera conforme a derecho**". Diferimos de la interpretación que hace la Mayoría del referido caso.

Del texto antes citado surge claramente que en dicho caso este Tribunal entendió que cuando en un acuerdo de sumisión no se limitaban las facultades remediales del

---

[10] La Ley Núm. 80 expandía los principios de la anterior Ley Núm. 50. J.R.T. v. Securitas, Inc., ante a la pág. 583.

árbitro, estableciéndose un acuerdo de sumisión amplio en cuanto al remedio, un árbitro estaba plenamente facultado a conceder la reposición y paga retroactiva como remedio. Más aún, este Tribunal expresó, específicamente, que al aprobar la Ley Núm. 80, la Asamblea Legislativa no pretendió limitar las sanciones que podía imponer un árbitro a lo dispuesto en dicha Ley sobre la mesada para casos de despido injustificado cuando mediaba un convenio colectivo y un amplio acuerdo de sumisión.

A esos mismos efectos, en Wolf v. Neckwear Corp., 80 D.P.R. 537, 543 (1958), expresamos que:

> Es en los convenios colectivos donde a menudo se concretan las causas justas de despido de los trabajadores. Casi siempre, en la práctica, los sindicatos y los patronos prefieren mantener una noción indeterminada y flexible de "justa causa" para el despido y someter a arbitraje cada caso específico en que haya discrepancia. Naturalmente, en dichos convenios colectivos de trabajo, la ausencia de causa justa da derecho a la reposición y al pago de los salarios dejados de devengar, **y no se trata pues de una simple cuestión de mesada**… (Énfasis nuestro)(citas omitidas).

Por otro lado, en Rivera v. Security Nat. Life Ins. Co., 106 D.P.R. 517, 526 (1977), expresamos que:

> De concluir la Junta que el patrono ha incurrido en una práctica ilícita al despedir a un trabajador por estar dedicado a actividades gremiales puede requerirle que cese en y desista de dicha práctica y ordenar su reposición, y abonándose o no la paga suspendida. (Énfasis suplido).

En consecuencia, no es correcta la conclusión de nuestros distinguidos compañeros a los efectos de que, para

dirimir cuál es el remedio que puede otorgar un árbitro en un caso de despido injustificado --donde al acuerdo de sumisión explícitamente le confirió la facultad al árbitro de conceder el "remedio adecuado"-- la mesada es el único remedio que puede conceder el árbitro en casos de despido injustificado.

Otra consideración importante nos obliga a apartarnos del razonamiento de estos Jueces. Si pensamos en todas las posibles controversias a las que pueden enfrentarse los árbitros --las cuales no siempre tendrán que ver con un alegado despido injustificado-- tendríamos que concluir que, limitar el remedio que puede conceder un árbitro a lo que establece una ley en particular, es un absurdo. Ello implicaría que, para cada situación particular que pueda ser sometida a arbitraje, el árbitro estaría obligado a buscar la ley específica que controle dicha situación. Dicho ejercicio sería inútil ya que en el procedimiento de arbitraje se atienden controversias tales como, i.e. sub-contratación, traslados, antigüedad, vacaciones, eliminación de plazas, etc., que quedarían en el limbo en cuanto al aspecto remedial, porque muchas de dichas controversias no están cubiertas por leyes especiales. Esto inevitablemente equivaldría a eliminarle todo sentido práctico a los convenios colectivos y al arbitraje obrero-patronal. Es por esta razón que somos del criterio que la frase "conforme a derecho" no puede interpretarse de la forma que lo hacen nuestros compañeros Jueces.

IV

Tal y como se ha dispuesto por este Tribunal, cuando un laudo tenga que ser emitido conforme a derecho, ello implica dos cosas: la primera, que los foros judiciales apelativos pueden intervenir con dicha decisión y revisar cuestiones de derecho sustantivo. La segunda; que el árbitro, al emitir el laudo, además de interpretar el convenio colectivo a la luz del derecho laboral vigente, tiene que ceñirse a interpretar el acuerdo de sumisión y el convenio colectivo de modo que el remedio que diseñe sea consustancial con ambos.

En consecuencia, la conclusión en este caso debe ser clara. La limitación en cuanto a las facultades remediales del árbitro no surge del hecho que un laudo tenga que ser emitido conforme a derecho. La referida limitación tiene que ser una que provenga específicamente del acuerdo de sumisión o del convenio colectivo.[11] Ni el convenio colectivo, ni el acuerdo de sumisión del presente caso contienen un lenguaje restrictivo de similar naturaleza. Como resultado de lo anterior, cuando en una sumisión se le da la facultad al árbitro de conceder el "remedio adecuado", este tiene plena facultad de conceder la

---

[11] Ejemplo de ello sería un artículo en un convenio que exprese, en cuanto a los remedios que pueda conceder un árbitro en casos de despidos injustificados, que éste únicamente puede conceder el remedio de la mesada, conforme a la Ley Núm. 80, o que únicamente puede ordenar la reinstalación, sin paga retroactiva, etc.

reposición y la paga retroactiva como dicho "remedio adecuado".[12]


VI

En el presente caso, como las partes no lograron convenir el acuerdo de sumisión, el árbitro, según la facultad que le otorga el Artículo IX del Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado, determinó cuál era el asunto a resolverse. En cumplimiento con el referido Reglamento, al determinar el asunto que se iba a someter a arbitraje, el árbitro tomó en consideración el convenio colectivo, las contenciones de las partes, y la evidencia admitida. Así quedó determinado el asunto a resolverse:

> "Determinar si la amonestación verbal y el despido del querellante, Nelson Maldonado, estuvieron justificados o no de conformidad con los hechos del caso, el Convenio Colectivo, y el derecho aplicable. De determinarse que no lo estuvieron el Árbitro proveerá el remedio adecuado."

Luego de celebradas varias vistas, el árbitro emitió su laudo en el cual hizo dos conclusiones: la primera; que tanto la amonestación verbal como el despido de Maldonado

---

[12] A modo de ejemplo, en el caso J.R.T. v. Caribbean Towers, Inc., 99 D.P.R. 595 (1971), el árbitro rindió un laudo en el que resolvió que el despido efectuado por el patrono no estuvo justificado y, como remedio, ordenó la reinstalación y el pago de los ingresos dejados de percibir por el empleado como consecuencia del despido. En ese caso, sostuvimos la validez del laudo y expresamos que el árbitro tenía facultad de resolver como lo hizo ya que no había en el acuerdo de sumisión ni en el convenio colectivo nada que impidiera al árbitro modificar la penalidad.

**no estuvieron justificados**. La segunda, que el **remedio adecuado**, según los hechos del caso ante su consideración, era la reposición inmediata de Maldonado y el pago de los haberes dejados de percibir desde la fecha de su despido.

No hay duda que el árbitro en el presente caso resolvió la controversia que le fue sometida de acuerdo al Acuerdo de Sumisión y al Convenio Colectivo suscrito por las partes. Esto es, primero determinó que el despido de Nelson Maldonado no estuvo justificado, y segundo --tal y como le permitía el Acuerdo de Sumisión-- concedió el remedio que estimó adecuado, el cual consistía en la reinstalación y en la paga de los salarios dejados de percibir desde el momento del despido hasta la reinstalación. El hecho que se consignara que el árbitro concediera el remedio adecuado significaba que el árbitro tenía autoridad amplia para conceder el remedio que, a discreción suya, considerara apropiado.

No hay controversia en el presente caso que el Convenio Colectivo suscrito entre las partes dispone que la decisión del árbitro será final e inapelable y que será cumplido por las partes siempre que sea conforme a derecho. Artículo 58 Sección 3(a). Además, es menester puntualizar que el referido Convenio, en su Artículo 5, Sección 2(c), señala que el árbitro tiene facultad para determinar si la suspensión o despido de un empleado estuvo o no justificado. Más adelante el mismo Artículo dispone para casos en que el árbitro determine que el despido o

suspensión del empleado no estuvo justificado y que éste ordenase la reposición con los salarios dejados de percibir. Así también, la Sección 2(d) del Artículo 5 y la Sección 3 del Artículo 44 del referido Convenio contemplan la posibilidad que un árbitro reponga al empleado en su empleo y conceda el pago total de los salarios dejados de percibir por éste.

Es por esto que, a pesar de sus <u>erradas aseveraciones</u>, coincidimos con la interpretación integrada del convenio colectivo hecha por los antes mencionados Jueces en el presente caso —del cual claramente se desprendían la reposición y paga retroactiva como uno de los remedios que un árbitro podía conceder— y con la expresión a los efectos que "[u]na lectura integral de las cláusulas contractuales antes transcritas <u>evidencia que las partes reconocieron la facultad del árbitro para ordenar un remedio más abarcador que el contemplado en la Ley Núm. 80</u>". (Énfasis nuestro).[13] No podemos estar más de acuerdo con lo anterior. Este es precisamente el fin de todo convenio colectivo, el proveer mayores beneficios a los empleados unionados que las leyes aplicables, las que usualmente proveen beneficios mínimos que, de ordinario, son mejorados mediante la negociación colectiva.

---

[13] Sin embargo, no podemos arribar a la misma conclusión de la Mayoría que el Acuerdo de Sumisión limitaba al árbitro a conceder el remedio de la Ley Núm. 80.

Es claro entonces que el Convenio Colectivo y el Acuerdo de Sumisión <u>no</u> limitaron el remedio que podía conceder el árbitro al remedio de la mesada contemplado por la Ley Núm. 80. Es más, el Convenio Colectivo no disponía de forma específica qué remedio podía otorgar un árbitro en caso en que entendiera que un despido no estuvo justificado.[14]

Además, según señalamos, en virtud de nuestra facultad limitada para revisar laudos de arbitraje, la cual, en ausencia de los factores antes enumerados, se justifica en casos que se consigne que el mismo se emitirá conforme a derecho, nuestro deber en el presente caso era determinar si, según el acuerdo de sumisión sometido al árbitro y el convenio colectivo, el remedio otorgado por el árbitro era uno procedente y contemplado por ambos. Vimos que así fue. El referido laudo emitido por el árbitro no contraviene ni el Acuerdo de Sumisión, ni el Convenio Colectivo suscrito entre las partes.

---

[14] Las únicas limitaciones establecidas por las partes a la facultad de los árbitros de elaborar remedios están contenidas en el Artículo 58, Secciones 9(b) y 9(c). Las mismas disponen respectivamente que:

> (b) El Árbitro no tendrá poder o autoridad para en forma alguna alterar, enmendar, cambiar, modificar, añadir o restar a ninguna de las disposiciones del artículo de 'Derechos de la Gerencia'. Un laudo en violación a lo antes citado será nulo y sin efecto.

> (c) El Árbitro no tendrá autoridad para conceder daños y perjuicios.

Aun cuando estamos de acuerdo con el resultado al que llegan los compañeros Jueces, al ordenar que Nelson Maldonado sea repuesto en su empleo con el pago de los haberes dejados de percibir, no podemos estar de acuerdo con su determinación  en cuanto a que la frase "conforme a derecho" significa que un árbitro está limitado por la Ley Núm. 80 en cuanto a los remedios que puede otorgar en casos de despido injustificado; más aún en este caso, cuando el Acuerdo de Sumisión claramente le otorgaba la facultad al árbitro de proveer el "remedio adecuado".


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Hermandad Independiente de
Empleados Telefónicos

    Peticionario

        v.

Celulares Telefónica, Inc.

    Recurrida

CC-2004-667

Opinión de Conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le unen el Juez Presidente señor Hernández Denton y el Juez Asociado señor Fuster Berlingeri.

San Juan, Puerto Rico a 18 de septiembre de 2006

En un caso de despido injustificado, ¿se excede en sus facultades el árbitro que al momento de emitir el laudo, el cual debe ser conforme a derecho, concede como remedio la reposición y paga retroactiva del empleado despedido, apartándose del remedio exclusivo de la mesada que confiere la Ley de Despido Injustificado, Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a et seq ("Ley Núm.80")?

Esta es la controversia a que hoy nos enfrentamos.

# I

En el presente recurso no se cuestiona la determinación arbitral que encontró injustificado el despido del empleado, por lo que resulta innecesario relatar detalladamente los hechos acontecidos que motivaron la destitución.  Baste señalar que el Sr. Nelson Maldonado fue amonestado verbalmente y, posteriormente, despedido de su trabajo en la compañía Celulares Telefónica, Inc. (en adelante "Celulares Telefónica") por alegadamente violentar ciertas normas del Reglamento de Disciplina.[15]

Inconforme con las sanciones disciplinarias tomadas, la Hermandad Independiente de Empleados Telefónicos (en adelante "la HIETEL") --como representante exclusivo de todos los empleados incluidos en la unidad apropiada--[16] recurrió ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico. Las partes no lograron convenir el acuerdo de sumisión,[17] por

---

[15] En la carta de despido con fecha de 24 de agosto de 2000, Celulares Telefónica explicó que el empleado Nelson Maldonado había infringido específicamente las Reglas 10 (negligencia o falta de interés en el desempeño de sus deberes), 18 (falta de atención, descortesía o negligencia al tratar con el público o con abonados) y 46 (insubordinación o falta de respeto a un supervisor; incluyendo la negativa a hacer su trabajo y/u obedecer órdenes escritas o verbales) del Reglamento de Disciplina.

[16] Véase Artículo 1 del Convenio Colectivo CTI-HIETEL, vigente desde el 23 de octubre de 1999 hasta el 22 de octubre de 2003, apéndice del recurso de *certiorari*, pág. 123.

[17] Celulares Telefónica entendió que el acuerdo de sumisión debía ser el siguiente: "Que el Árbitro determine conforme a derecho si la reprimenda verbal y el despido impuestos por la Compañía al querellante estuvieron o no

lo que el árbitro, siguiendo lo dispuesto en el convenio

colectivo,[18] determinó que el asunto a resolver era el

siguiente:

> "Determinar si la amonestación verbal y el despido del querellante, Nelson Maldonado, estuvieron justificados o no de conformidad con los hechos del caso, el Convenio Colectivo **y el derecho aplicable**.   De determinarse que no lo estuvieron el Árbitro proveerá el remedio adecuado."  (Énfasis nuestro.)

Celebradas varias vistas, el árbitro emitió su laudo

en el que concluyó que tanto la amonestación verbal como el

despido de Maldonado no estuvieron justificados.   Ante el

reclamo del patrono a los efectos de que el remedio debía

---

justificados.   De estar justificados los mismos, que proceda a desestimar las querellas presentadas".   Por su parte, la HIETEL sometió varias controversias a resolver, a saber: "Determinar a la luz de la prueba si el empleado Nelson Maldonado fue objeto de trato discriminatorio en la reprimenda verbal de la cual fuera objeto teniendo como resultado dicho incidente que el mismo fuera incluido y utilizado en el proceso disciplinario posterior. . . . De determinarse que el incidente no ocurrió o que de haber ocurrido no justificara dicha amonestación verbal, que se elimine del registro personal toda referencia a dicho incidente y que el mismo no puede ser tomado en consideración para fines disciplinarios posteriores. . . . Determinar a la luz de la prueba y del convenio colectivo si el despido del empleado Nelson Maldonado estuvo o no justificado.   De determinar que dicho despido no estuvo justificado, ordenar la reposición del empleado a su empleo con el pago retroactivo a la fecha de su despido de todos los salarios, beneficios marginales y cualquier otro remedio aplicable que estime el Árbitro, incluyendo pero no limitándose a intereses legales y honorarios de abogado."

[18] El Artículo IX del Reglamento para el Orden Interno de los Servicios de Arbitraje del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanoss, en su Sección b, dispone que "[e]n la eventualidad que las partes no logren un acuerdo de sumisión, dentro de un término razonable, el árbitro determinará el asunto preciso a ser resuelto tomando en consideración el convenio colectivo, las contenciones de las partes y la evidencia admitida".   Véase apéndice del recurso de *certiorari*, pág. 199.

ser exclusivamente la mesada dispuesta en la Ley Núm. 80, el árbitro resolvió que, en su calidad de tercero imparcial tenía amplia "facultad y discreción para emitir remedios arbitrales consistentes con las determinaciones realizadas."[19]    Concluyó que el acuerdo de sumisión le concedía autoridad para emitir el remedio que correspondiera y a tales efectos, ordenó la reposición inmediata del Sr. Nelson Maldonado y el pago de los haberes dejados de recibir desde la fecha de su despido.

Celulares Telefónica recurrió en revisión judicial del laudo de arbitraje ante Tribunal de Primera Instancia, Sala de San Juan.    En cuanto al remedio concedido, Celulares Telefónica sostuvo que por ser una compañía privada para la fecha en que ocurrieron los hechos, solo era permisible conceder en derecho, el remedio de mesada que provee la Ley Núm. 80.

El foro de instancia confirmó la determinación del árbitro en lo referente a que el despido del empleado fue injustificado; sin embargo, revocó el remedio otorgado para que el mismo se circunscribiera a la mesada que dispone la Ley Núm. 80.    Resolvió que cuando el laudo tiene que ser conforme a derecho y el convenio no provee remedio

---

[19] Véase resolución del árbitro Angel A. Tanco Galíndez emitida el 7 de octubre de 2002, apéndice del recurso de *certiorari*, pág. 65.

particular para el despido injustificado, el árbitro no tiene facultad para ordenar la reposición en el empleo.[20]

Inconforme con tal determinación, la HIETEL acudió al Tribunal de Apelaciones. Dicho foro confirmó al tribunal de instancia. Luego de analizar las disposiciones del convenio colectivo y tomando en cuenta que el laudo arbitral debía ser conforme a derecho, el tribunal apelativo intermedio concluyó que las partes no incluyeron en la sumisión de forma específica, que el árbitro como excepción al derecho aplicable por virtud de la Ley Núm. 80, pudiera ordenar la reposición de un empleado despedido sin justa causa. En vista de lo cual confirmó la determinación de instancia.

En desacuerdo, la HIETEL recurrió ante nosotros mediante recurso de certiorari y planteó como único error del tribunal a quo, lo siguiente:

> Erró el Tribunal de Apelaciones al negarse a reconocer la facultad del Árbitro de otorgar los remedios de reposición y paga de los haberes dejados de devengar por el empleado Nelson Maldonado desde la fecha de su despido a pesar de que este tipo de remedio está explícitamente contemplado en el Convenio Colectivo en varias de sus disposiciones y no existe como tal una prohibición expresa por las partes contra el mismo.

El 29 de octubre de 2004 expedimos el recurso presentando. Ambas partes presentaron sus respectivos

---

[20] Véase Sentencia del Tribunal de Primera Instancia, Sala de San Juan, emitida el 21 de octubre de 2003, apéndice del recurso de *certiorari*, págs. 18-19.

alegatos así como también, el Secretario del Departamento del Trabajo y Recursos Humanos quien solicitó comparecer como amigo de la corte.

En su alegato, Celulares Telefónica nos planteó que el foro apelativo intermedio había actuado sin jurisdicción por cuanto el recurso presentado por la HIETEL fue presentado fuera del término dispuesto para ello. El 23 de febrero de 2006, dictamos una sentencia desestimando el recurso por falta de jurisdicción. La HIETEL presentó oportuna moción de reconsideración. Acordamos reconsiderar y dejamos sin efecto la sentencia dictada. El recurso entonces quedó sometido ante nuestra consideración.

## II

La controversia que hoy corresponde resolver es una que con marcada frecuencia se está suscitando ante los foros de instancia como en el Tribunal de Apelaciones.[21] Así como también, claro está, ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, conforme nos informara el amigo de la corte. En una ocasión anterior este Tribunal se enfrentó a la misma

---

[21] Véase entre otros, Confederación de Organizaciones de P.R. v. Servidores públicos Unidos de P.R., KLCE-05-01109; Ranger American Armor Services, Inc. v. Sindicato de Guardias de Seguridad y Camiones Blindados, KLAN-2005-0410; Hospital Episcopal San Lucas de Ponce v. Unidad Laboral de Enfermeras, KLCE-04-01031.

mas la resolución del caso se configuró mediante Sentencia y no Opinión del Tribunal.[22]

## A

El convenio colectivo es el instrumento de mayor importancia de la negociación colectiva en el campo laboral. El mismo representa el triunfo de la negociación sobre la fuerza, de la razón sobre la intransigencia. *U.I.L. de Ponce* v. *Dest. Serrallés, Inc.*, 116 D.P.R. 348, 352 (1985). Como tal, promueve la paz industrial por lo que los convenios están revestidos de un alto interés público. *Nazario* v. *Tribunal Superior*, 98 D.P.R. 846 (1970).

El convenio colectivo representa un contrato que tiene fuerza de ley entre las partes que lo acuerdan y lo suscriben. *J.R.T.* v. *Junta Am. Muelle Mun. de Ponce*, 122 D.P.R. 318 (1988). En éste se recogen las normas que habrán de marcar las relaciones entre patronos y empleados, por ello, sus términos y condiciones obligan tanto al patrono como a la unión y a sus miembros. *J.R.T.* v. *Corp. de Crédito Agrícola*, 124 D.P.R. 846, 849 (1989); *Rivera Adorno* v. *Autoridad de Tierras*, 83 D.P.R. 258 (1961).

De otra parte, el arbitraje laboral "es el medio más apropiado y deseable para resolver las disputas que surgen de la aplicación e interpretación de los convenios

---

[22] Véase, Unión Internacional de Trabajadores de la Industria de Automóviles, Aéreoespacio o Implementos Agrícolas U.A.W., Local 1850 v. Asoc. De Empleados del E.L.A., CC-2001-842.

colectivos. Es un mecanismo rápido y menos costoso que los procedimientos judiciales, a la vez que ofrece mayor flexibilidad a las partes." *U.G.T.* v. *Corporación para la Difusión Pública*, 26 de agosto de 2006, 168 D.P.R. ___, 2006 TSPR ___. Véase además, *J.R.T.* v. *Hato Rey Psychiatric Hosp.*, 119 D.P.R. 62, 68 (1987); *Unión de la Industria Licorera* v. *Destilería Serrallés*, 116 D.P.R. 348, 353-354 (1985). Es un mecanismo que propende a mantener la estabilidad y la paz industrial, propósitos que animan las leyes laborales. *S.I.V. de P.R.* v. *Otis Elevador Co.*, 105 D.P.R. 832, 836 (1977).

En el proceso de arbitraje laboral dos partes someten voluntariamente una controversia a un tercero imparcial, el árbitro, quien luego de escuchar ambas posiciones resuelve la controversia emitiendo un laudo cuyo efecto es final y obligatorio entre las partes. D. M. Helfeld, La jurisprudencia creadora: Factor determinante en el desarrollo del Derecho de arbitraje en Puerto Rico, 70 *Rev. Jur. U.P.R.* 1 (2001). La determinación arbitral aunque no constituye un contrato privado ni una sentencia judicial, goza de la naturaleza obligatoria que caracteriza a ambos. *J.R.T.* v. *Otis Elevator*, 105 D.P.R. 195, 199 (1976); *Junta de Relaciones del Trabajo de Puerto Rico* v. *New York & Porto Rico Steamship*, 69 D.P.R. 782, 800 (1949). Secuela de ello, la importancia que reviste la facultad del árbitro para interpretar los convenios colectivos. No debe

sorprender por lo tanto, que se afirme: "Probably no function of the labor-management arbitror is more important than that of interpreting the collective bargaining agreement." Elkouri & Elkouri, *How Arbitration Works*, ABA, 2003, Sixth Edition, pág. 428.

La autoridad del árbitro para resolver una controversia entre el patrono y el empleado y dictar el remedio correspondiente, emana del texto del convenio colectivo o del acuerdo de sumisión dispuesto para un caso en particular. *López* v. *Destilería Serrallés*, 90 D.P.R. 245, 256 (1964). Es decir, las partes quedan libres para delimitar el radio de acción del árbitro, a través de lo que acuerden a esos efectos en el convenio colectivo o en el acuerdo de sumisión. En ese sentido, en Elkouri & Elkouri, *op. cit.*, pág. 486, se indica: "Arbitration exists as private alternative to the courts. As such, the rules are those drafted . . . by the parties themselves. They are private rules, and the party chosen to interpret them --the arbitror-- is an individual who draws his or her authority from the collective bargaining agreement, or the agreement to submit the matter to arbitration. **As such, private sector parties are free to control the degree to which the arbitror is to consider external law, including statutes and regulations, in deciding cases.**" (Énfasis nuestro.)

El convenio colectivo y el acuerdo de sumisión, como vemos, delimitan los poderes del árbitro y el ámbito de su

facultad decisional.  De ordinario, en lo que se refiere a las facultades remediales del árbitro, éste debe tener amplia autoridad para diseñar un remedio adecuado al laudo que emite; claro está, **siempre y cuando el remedio sea consustancial con el convenio colectivo y el acuerdo de sumisión bajo el cual se actúa**.  *Rivera* v. *Samaritano & Co*., 108 D.P.R. 604, 608 (1979).  Sobre este asunto nos dicen los tratadistas Elkouri lo siguiente:

> Arbitrators have broad discretion in fashioning a remedy . . . that is within the arbitrator's powers and is 'rationally related' to the contract . . . Courts will not enforce an award, however, that extends beyond the explicit limitations on the arbitrator's authority that are contained in the contract and relevant statutes.

Elkouri & Elkouri, *op. cit*., pág. 1344.

Antes bien, la controversia en este caso es precisamente qué limitación, si alguna, se le impone al árbitro a la hora de éste confeccionar su remedio en un caso de despido injustificado, cuando en el convenio colectivo o en el acuerdo de sumisión se ha hecho constar que el laudo que emita debe ser uno acorde a derecho.  En otras palabras, ante la naturaleza contractual del convenio colectivo, hay que determinar si tal expresión constituye una limitación a los poderes remediales del árbitro que le impida conceder un remedio más amplio del que se contempla en la Ley Núm. 80.

**B**

Ello nos obliga a plantearnos, ¿qué supone que la decisión del árbitro sea una conforme a derecho? Reiteradamente hemos expresado que cuando un laudo tiene que ser emitido conforme a derecho, los árbitros deben atenerse a las normas interpretativas de derecho sustantivo y las doctrinas legales prevalecientes. *J.R.T.* v. *New York & Porto Rico Steamship*, *supra*, a la pág. 802. Véase además, *Autoridad sobre Hogares* v. *Tribunal Superior*, *supra*, a la pág. 354. El árbitro por lo tanto, no puede ignorar nuestra interpretación sobre distintos aspectos del derecho laboral, así como tampoco las decisiones del Tribunal Supremo de los Estados Unidos. Tampoco puede obviar la legislación laboral prevaleciente. *Condado Plaza Hotel* v. *Asoc. de Empleados de Casino*, *supra*, a la pág. 349; *Aut. Edif. Públicos* v. *Unión Independiente*, 130 D.P.R. 983, 987 (1992); *J.R.T.* v. *Hato Rey Psychiatric Hosp.*, *supra*, a la pág. 68.

La exigencia que el laudo sea conforme a derecho coloca a éste fuera del ámbito de las reglas ordinarias de revisión judicial; es decir, aquellas que afirman su finalidad no obstante los errores de hecho o de derecho. *J.R.T.* v. *Vigilantes, Inc.*, 125 D.P.R. 581 (1990); *U.I.L. de Ponce* v. *Dest. Serrallés*, *supra*, pág. 352-354. Así, cuando el laudo deba ser conforme a derecho los méritos jurídicos de la decisión arbitral pueden ser revisados para

asegurarnos que lo dispuesto sea conforme las normas de derecho aplicables.

### III

La Ley de Despido Injustificado provee una indemnización para aquellos empleados contratados por término indefinido que son despedidos sin justa causa. La ley contiene una enumeración de qué es justa causa. Además, la ley contempla como remedio para el empleado despedido injustificadamente una indemnización equivalente a un mes, o varios meses de sueldo, dependiendo de los años de servicio, más una semana de compensación por cada año de servicio al patrono. 29 L.P.R.A. sec. 183a. Hemos dispuesto que este remedio, conocido comúnmente como la mesada, es el remedio exclusivo en casos de despidos injustificados, salvo que el empleado esté protegido por alguna legislación social especial. *Porto y Siurano* v. *Bentley P.R., Inc.*, 132 D.P.R. 331, 342 (1992); *Rivera* v. *Security Nat. Life Ins. Co.*, 106 D.P.R. 517, 526 (1977).

Como hemos indicado, la facultad decisional y remedial del árbitro está definida y limitada por lo dispuesto en el convenio colectivo y el acuerdo de sumisión. Por lo tanto, en un caso de despido injustificado, cuando el acuerdo de sumisión o el convenio colectivo dispongan expresamente que el laudo deberá ser conforme a derecho, el árbitro viene obligado a: primero, determinar si hubo o no causa justificada para dicho despido a la luz de lo dispuesto en la Ley Núm. 80 y nuestra jurisprudencia interpretativa; y

segundo, al confeccionar el remedio correspondiente, deberá atenerse a la mesada por ser ésta el remedio único que contempla la ley.

En *J.R.T.* v. *Seguritas, Inc.*, 111 D.P.R. 580, 583-584 (1981), ya habíamos intimado este resultado. Allí resolvimos que un árbitro, en un caso de despido injustificado, podía conceder un remedio distinto al provisto en la Ley Núm.80, **si no se habían limitado sus poderes a que el laudo fuera conforme a derecho**. Específicamente indicamos lo siguiente:

> No discernimos disparidad entre la política pública del estatuto y el laudo emitido. No se nos ha demostrado que la intención legislativa haya sido fijar sanciones máximas exclusivas para casos de despido cuando media un convenio colectivo y un amplio acuerdo de sumisión sobre la justificación de la cesantía. ¿Cómo es que puede interpretarse que la legislación sobre la mesada ha obedecido por décadas al propósito de impedir que un árbitro, bajo un acuerdo de sumisión **que no limite claramente sus poderes**, ordene la reposición de un empleado y el pago de los sueldos dejados de percibir, más intereses? En Puerto Rico, hemos distinguido tajantemente entre los derechos bajo un convenio colectivo y los derechos de mesada. (Énfasis nuestro.)

*Íbid*, a la pág. 583.

*A contrario sensu*, cuando los poderes del árbitro han sido limitados por el acuerdo de sumisión o el convenio colectivo mediante la exigencia que el laudo se atenga a derecho, el remedio diseñado debe ser cónsono con el ordenamiento legal vigente sobre despido injustificado. Conforme a ello, el tercero imparcial debe guiarse por los parámetros establecidos en la Ley Núm. 80 al momento de

confeccionar el mismo. **Por lo tanto, somos del criterio que cuando el convenio colectivo claramente ordena que el laudo sea conforme a derecho, sin más, el remedio exclusivo tiene que ser lo que la ley provee; es decir, la mesada.**

Ahora bien, si el convenio colectivo o el acuerdo de sumisión además de indicar que el laudo sea conforme a derecho proveen en su texto remedios adicionales como por ejemplo, la reposición y la paga de los haberes dejados de recibir, el árbitro no tiene que ceñirse en cuanto al remedio se refiere, a lo dispuesto en la Ley Núm. 80. En estos casos resulta evidente que las partes —e.g., patrono y empleados— acordaron reconocer esta opción para casos de despidos proveyendo un remedio más amplio que el que contempla la ley. Esa es la voluntad de las partes que hay que respetar. El convenio colectivo es, después de todo, un contrato producto de un proceso deliberativo y de negociación entre patrono y la unión en representación de los empleados, que sirve, entre otras cosas, para procurar la paz industrial y como tal, merece nuestra deferencia. En estos casos, la incorporación de lo dispuesto en la Ley Núm. 80 se limita a la determinación de qué constituye justa causa, y no del remedio a conceder. *J.R.T.* v. *Caribbean Towers, Inc.*, 99 D.P.R. 595 (1971); *S.I.U. de P.R.* v. *Otis Elevators*, *supra*.

Si por el contrario, el convenio colectivo o el acuerdo de sumisión no requieren que el laudo sea conforme a derecho y guardan silencio respecto la facultad remedial

del árbitro, éste podrá conceder el remedio que estime procedente incluyendo la reposición y la paga atrasada. Ello necesariamente debe ser así ya que los árbitros tienen amplia latitud para la confección de remedios que adelanten los objetivos plasmados en el convenio colectivo. Esta facultad está subsumida dentro de su capacidad para formular el remedio apropiado. M. Hill y A. V. Sinicropi, *Remedies in Arbitration*, Washington D.C. 1981, pág. 55. Véase, J.R.T. v. *Otis Elevador, supra*. La reinstalación del empleado ha sido el remedio más común utilizado por los árbitros. D. Fernández Quiñones, *El arbitraje obrero-patronal*, Forum 2000, Primera Edición, pág. 221; M.S. West, The case against reinstatement in wrongful discharge, 1988 *Univ. of Illinois L. Rev. 1*.

Apliquemos la normativa antes expuesta a la controversia ante nuestra consideración a la luz de las disposiciones del convenio colectivo acordado entre las partes y el acuerdo de sumisión sometido al árbitro en este caso.

**IV**

Como ya hemos indicado, la función principal del árbitro es interpretar y aplicar las cláusulas del convenio colectivo para resolver las disputas obrero-patronales. *J.R.T.* v. *Junta Adm. Muelle de Ponce, supra*, págs. 330-331. Véase*, W.R. Grace & Co.* v. *Local Union 759*, 461 U.S. 757 (1983); *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36 (1974); *United Steelworkers* v. *Enterprise Wheel & Car*

*Corp.*, 363 U.S. 593 (1960); *Fernández Quiñones, op. cit.*, págs. 191-192.

Al interpretar un convenio colectivo se "debe leer el . . . [mismo] como un todo y cada parte debe interpretar[se] en referencia a las demás cláusulas, de forma que se le de efectividad al propósito general del mismo . . . [se] debe [además] perseguir que la interpretación que se haga de las disposiciones del convenio arrojen un significado razonable y efectivo del mismo." *J.R.T.* v. *Junta Adm. Muelle Mun. de Ponce, supra*, pág. 331. Debe analizarse el contrato laboral de manera integral y no auscultar el significado y alcance de sus cláusulas aisladamente. Sólo de esta forma se logra adelantar, e impartirle eficacia, al propósito general del mismo. *Condado Plaza Hotel* v. *Asoc. de Empleados de Casino, supra*.

Los tratadistas, Frank y Edna Elkouri indican, en igual sentido, lo siguiente:

> [T]he primary rule in construing a written instrument is to determine, not alone from single word or phrase, **but from the instrument as a whole**, the true intent of the parties and to interpret the meaning of a questioned word or part with regard to the connection in which it is used, the subject matter and its relation to all other parts and provisions.
>
> . . .
>
> **Similarly, sections or portions cannot be isolated form the rest of the agreement and given construction independently of the purpose and agreement of the parties or evidenced by the entire document.  The meaning of each paragraph**

**and each sentence must be determined in relation to the contract as a whole**. (Énfasis nuestro.)

En el caso de autos, el convenio colectivo así como el acuerdo de sumisión, disponían que las controversias sometidas a arbitraje debían ser resueltas conforme a derecho. El convenio no indicaba que el despido tenía que ser por justa causa.[23] En tal sentido, el Artículo 58 del Convenio Colectivo, Sección 3, sobre Arbitraje, disponía en lo pertinente:

> "La decisión del Árbitro será final e inapelable, la cual será seguida y cumplida por las partes **siempre que sea conforme a derecho.**" (Énfasis nuestro.)

Además, se indicaba en el mismo que el tercero imparcial no podía "en forma alguna alterar, enmendar, cambiar, modificar, añadir o restar a ninguna de las disposiciones de este Convenio . . . Un laudo en violación a lo antes indicado será nulo y sin efecto." Artículo 58, Sección 9(b) del Convenio Colectivo. El contrato laboral en cuestión expresamente excluía la concesión de daños y perjuicios. Artículo 58, Sección 9(c) del Convenio Colectivo.

---

[23] De hecho, el Artículo 58, secciones 4 (a) y (b), del Convenio colectivo, que versan sobre los procedimientos para las querellas en casos de suspensión o destitución hablan en términos de suspensiones o despidos "injustos." Se indica sobre el particular: "En casos de un empleado considerar injusta su suspensión o despido deberá presentar su querella a la Hermandad. . . . En casos que la Hermandad también considere injusta la suspensión o despido del empleado, la Hermandad presentará una querella por escrito. . . . ante el Director de Recursos Humanos de la Compañía."

Si nuestro análisis concluyera con una evaluación de las disposiciones antes transcritas, habría que concluir, necesariamente, que constituyó un error del árbitro ordenar la reposición del empleado a su puesto con el pago de los haberes dejados de percibir, y procedería a confirmar al tribunal apelativo intermedio. Una lectura en tal sentido sin embargo no representa la interpretación integral del convenio que nos ordena la doctrina sino todo lo contrario, una visión fraccionada y disgregante del convenio. Nos explicamos.

El Artículo 5, Sección 2(c), del Convenio Colectivo dispone:

> **En todos los casos de suspensión o despido en que un Árbitro, Tribunal u organismo administrativo determinare que la suspensión del empleado o el despido no estuvo justificado y ordenare la reposición del empleado con los salarios dejados de percibir total o parcialmente en los casos de despido,** u ordenare el pago total o parcial de los salarios dejados de percibir durante la suspensión, la Compañía deberá descontar de dicha paga el total de las cuotas de la Hermandad dejadas de pagar por el empleado durante el tiempo que estuvo despedido o suspendido, según fuere el caso y remitir su importe a la Hermandad de conformidad con este Artículo. (Énfasis nuestro.)

La sección subsiguiente también hace alusión a "aquellos casos de suspensión o despidos que fuesen transigidos y medie como parte del acuerdo **el pago total o parcial de salarios dejados de percibir por el empleado.**" (Énfasis nuestro.) Artículo 5, Sección 2(d). Del mismo modo, el Artículo 44, en su Sección 3, al referirse al plan médico del empleado unionado establece:

> La Compañía mantendrá vigente la cubierta seleccionada mientras el empleado permanezca en empleo activo con la Compañía. La Compañía cancelará la cubierta cuando el empleado, por cualquier razón, sea despedido, cesanteado, renuncie, fallezca o sea suspendido por más de treinta (30) días. **De un árbitro reponer a un empleado con todos los haberes** y el empleado presentar evidencia de los gastos médicos incurridos, la Compañía le reembolsará el costo de dichos gastos, conforme los términos del Plan Médico vigente. (Énfasis nuestro).

Una lectura armónica de las cláusulas contractuales antes transcritas pone de manifiesto la intención de las partes firmantes del convenio colectivo de reconocer la facultad del árbitro para ordenar un remedio más abarcador que el contemplado en la Ley Núm. 80. Con esta interpretación nos atenemos al sentido común y usual del lenguaje utilizado en el convenio. Llegar a la conclusión contraria dejaría sin efecto las referidas cláusulas que representan la voluntad de las partes una vez concluido el proceso de negociación colectiva. De esta forma, interpretamos el convenio colectivo de forma razonable haciendo efectiva la intención de las partes.

Recordemos lo que hemos dicho ya en tantas ocasiones sobre la importancia que tiene el convenio colectivo en el campo laboral difícilmente puede ser sobreestimada. Éste regula las relaciones entre patrono y empleado y es el producto de largas y acaloradas horas de discusión entre éstos. El convenio tiene fuerza de ley entre las partes suscribientes. Nuestra responsabilidad es por lo tanto, hacer eficaz y prestarle validez a lo allí dispuesto. El

convenio colectivo "debe ser siempre objeto del más entusiasta endoso por parte de los tribunales." *U.I.L. de Ponce* v. *Dest. Serrallés, Inc., supra*, pág. 352.

Esta interpretación es consistente con la posición que nos presenta el Secretario del Trabajo. Éste nos indicó que "[a]l analizar en su totalidad el convenio colectivo, armonizando todas sus cláusulas, resulta claro que las partes en ningún momento intentaron limitar las facultades remediales del árbitro." Alegato del *Amicus Curiae*, págs. 14-15.

La peticionaria, sin embargo, nos conmina a que interpretemos la frase "conforme a derecho" en casos de despido injustificado de manera tal, que se utilice la legislación laboral pertinente exclusivamente para determinar lo que constituye "justa causa" y no respecto al remedio. En cuanto a éste, las partes tendrían que convenir expresamente que el árbitro se limitará a la mesada disponible en la Ley Núm. 80. La interpretación propuesta no nos convence. La HIETEL nos invita a adoptar lo dispuesto en la Ley Núm. 80 para aquello que le es de beneficio y descartar la misma cuando no le satisface. Este proceder no parece razonable. La referencia a resolver conforme a derecho incorpora de la ley lo que es justa causa así como también la mesada como remedio exclusivo al despido sin causa justificada, pues ello fue lo que proveyó el legislador. No podemos eviscerar la Ley

Núm. 80 para acoger lo que nos gusta y descartar lo que nos disgusta.

**IV**

Por los fundamentos antes expuestos, procede que se dicte sentencia revocando la sentencia dictada por el Tribunal de Apelaciones, y se ordene que el señor Nelson Maldonado sea repuesto en su empleo con el pago de los haberes dejados de percibir.

Anabelle Rodríguez Rodríguez
Juez Asociada